### PANNELL v STATE

Ohio Appeals, 2nd Dist, Franklin Co

No 2169. Decided May 24, 1932

S. J. Walters, C. W. Warfield and William M. Gracey, Columbus, for plaintiff in error.

W. E. King, Columbus, for plaintiff in error.

Donald J. Hoskins, Prosecuting Attorney, Columbus, Ralph J. Bartlett and Eugene Carlin, Ass't Prosecuting Attorneys, Columbus, for defendant in error.

ALLREAD, PJ.

There are three grounds of error. The first is that the trial court permitted too extensive a voir dire examination of the jurors previous to their being impanelled; and, second, that the trial court erroneously limited the force of the evidence as to the incarceration in an insane asylum of Pannell's father; and, third, that the trial court limited the force of the evidence upon the motion for new trial upon the ground of newly discovered evidence. We consider these in their order.

The trial court permitted the prosecuting attorney to examine the prospective jurors upon the subject of a recommendation of mercy. They were examined generally as to the proposed good faith of the juror in making the recommendation. There is only one objection made to the examination and that is in the case of Mr. L. W. Johnson, who was afterwards discharged peremptorily by counsel for defendant. This objection takes the place of an exception under the provisions of §13442-7 GC. There may be a question as to the alleged error in the examination of this witness where he is afterwards peremptorily challenged. Still we have examined this question. On page 28, the court asks the following question:

"THE COURT: Then it becomes a question of considering what the penalty is, whether it is the death penalty or mercy. Would there have to be some reason in your mind why you would recommend mercy or would you just recommend mercy in order to agree with the other jurors?

"THE WITNESS: No, sir.

"THE COURT: You would have to have some reason?

"THE WITNESS: Yes sir.

"Q. (By Mr. Hoskins): If there were no reason you would vote for the death penalty? A. Yes.

"MR. WALTERS: I want to object to that. It is discretionary with the jurors as to whether or not they recommend mercy. There has not been anything said in the law as to finding some reason. The question of recommending mercy is discretionary with the jury always and the stressing of this fact of finding some reason—

"THE COURT: But everything that a

person does they have to have some reason for doing.

"MR. BARTLETT: It is discretionary, yes, but if they exercise it without reason, it is an abuse of discretion.

"THE COURT: I think that is a proper question."

There were similar questions proposed to other jurors to which no exceptions were taken by any of the counsel. The question is whether this question was improper and erroneous.

The case of **State v Ellis, 98 Oh St, p. 21,** is cited. The opinion in this case is written by Judge Wanamaker and concurred in by Nichols, CJ, Newman and Matthias, JJ. This made a bare majority of the court. In this case it was held:

"1. In a voir dire examination of veniremen to qualify them as fair and impartial jurors under the constitution and the law, such examination, where not specifically controlled by statute, is largely in the discretion of the trial judge, and no prejudicial error can be assigned in connection with such examination unless there be a clear abuse of such discretion."

Under this branch of the syllabus it is clear that there has been no prejudicial error in the voir dire examination.

The 2nd and 3rd propositions of the Ellis case are as follows:

"A venireman's opinion as to the wisdom or unwisdom of a recommendation of mercy upon a conviction of murder in the first degree is not subject to inquiry upon a voir dire examination of the venireman.

"Whether or not a recommendation of mercy shall be made upon finding an accused guilty of murder in the first degree is a matter vested fully and exclusively in the discretion of the jury."

These branches of the syllabus must be strictly construed and be limited to the one question, to-wit: the wisdom or unwisdom of a recommendation of mercy. No other question was presented in this case and no other question was decided.

In the subsequent case of **Shelton v State, 102 Oh St, 376** it was held that the accused upon trial had a right to have his counsel argue the question of a recommendation of mercy and that a refusal thereof was error.

In the succeeding case of **Howell v The State, 102 Oh St, 411,** the court went further and held in syllabus (1):

"Sec 12400, GC, giving the jury discretion to recommend mercy in cases of conviction of first degree murder, confers an absolute discretion which should not be influenced by the court. However, this discretion should be exercised in view of all the facts and circumstances disclosed by the evidence."

In the second syllabus it is decided:

"Under his oath in the trial of capital offenses, the juror is required to make true deliverance between the state and the accused. This requires not only his determination whether the accused is guilty of first degree murder, but whether a recommendation of mercy should be made. Both questions should be determined from the knowledge the juror acquires as a juror and from the facts and circumstances developed or undeveloped by the evidence.

"In such a case it was not error for the court, in its charge, to say to the jury that it was their duty 'to consider and determine whether or not, in view of all the circumstances and facts leading up to, and attending the alleged homicide as disclosed by the evidence,' they should or should not make such recommendation."

The decision in this case must necessarily be held to be a modification of the previous decision in State v Ellis. In fact the view that the case of Howell v State, supra, is a modification or change of opinion is shown by the fact that the personnel of the court had been changed, that Judge Matthias who voted in favor of the decision in the Ellis case had changed his views and that a dissenting opinion of Judge Robinson going into the foundation of his dissent and recounting the purposes which in his opinion govern the authority of the jury to recommend mercy. In the Howell case the Supreme Court holds that the court and jury in the findings including the recommendation of mercy are acting judicially and that the recommendation of the jury must be based on the facts shown in evidence.

It is only a step further to hold that the finding of the jury as to mercy must be founded on the evidence and that the jury may therefore, in order to show their impartiality, be questioned as to their ability to render not only a correct judgment upon the finding of the guilt but also as to the recommendation.

The case of Winston v The United States, 172 U.S., 303, is cited as authority for the

plaintiff in error. In that case the court undertook to instruct the jury that they could not recommend clemency except in cases in which the court was of opinion that there are palliating or mitigating circumstances. The Supreme Court held to the contrary and held that the jury had the right upon a view of the whole evidence to recommend mercy. We think that this case is not authority for the proposition that the court had no right to permit an examination of prospective jurors upon their voir dire to determine whether they will enforce this provision for the recommendation of mercy honestly and in good faith. That was the force and effect of the examination here.

There is no prejudicial error as to the examination of any of the jurors actually accepted as jurors and retained in the case. Nor is there any exception taken as to the voir dire examination of any juror who was actually accepted as a juror. We can not escape the view that this objection is not sufficient to require a reversal of the judgment and sentence.

The next question relates to the evidence as to the confinement of the father in an insane asylum and also as to other members of the family similarly confined. It does not appear that the witness Pannell was testifying from his own knowledge. Still it may be asserted that he was giving general information as to the family. Even if this was evidence to be considered, we think that the trial court was justified in excluding the same or limiting its effect unless it was connected up with the mental or other condition of Pannell, the plaintiff in error, at the time of the murder. There was no effort to do this. This objection must therefore be overruled.

The next question relates to the commission to take the testimony of certain witnesses in Virginia. The testimony sought to be taken was to prove that the father was an inmate of an insane hospital at the time of his death and that also one other member of the family was an inmate of a similar institution.

We think that in the absence of some connection between the circumstances of the father and sister being confined in a public institution and the defendant, at or about the time of the commission of this offense, that the evidence was incompetent, and that the court had a right to reject the same. Besides the opening up of the case for a new trial upon the grounds of newly discovered evidence is a matter to some extent within the discretion of the

trial court, and it does not appear that such discretion has been abused.

The trial progressed. The State called several witnesses as to the details of the crime. There had been a prior encounter between the deceased and Jerry Pannell, the brother of Hampton. This was the beginning of the trouble. Several conversations are shown in evidence as to threats on the part of both Jerry Pannell and Hampton Pannell. The testimony of several witnesses is offered by the State to prove that these threats were made by Hampton Pannell against the deceased.

On July 20th, 1930, the day of the homicide, the testimony tends to prove that Jerry Pannell and Hampton Pannell came to the home of Mrs. Cary Redman, where Howerton was rooming, and sought to see Howerton. Howerton, the deceased, was in his room on the second floor of the home of Cary Redman on Mt. Vernon Avenue.

That on said date the defendant, Hampton Pannell, bought and drank a half pint of liquor, and he and his brother, Jerry Pannell, went over to the residence of Mrs. Redman. Mrs. Redman hesitated to let them in, but afterwards did so, saying that she was sure that nothing would happen in her home.

Olivia Ware, a friend of Howerton's, went in the house and also went up to his room to see Howerton. She was talking with Howerton when Hampton and Jerry Pannell came up the stairway and entered the room.

Howerton, when the Pannells came to the room, made a passing remark to the Pannells. Howerton's back was to the door in which the Pannells entered. Clutched in his hand to his rear Hampton held an open knife. Without warning he plunged the open knife into Howerton's back and repeated it several times.

The temporary Coroner, or Dr. Howers, testifies that there was a large V shaped cut behind the left ear. This severed the artery and extended out into the skull. There was also another cut that went in the liver and there was still a third that went into the left arm. The doctor further testifies that the cause of death was a multiple laceration, shock and hemorrhage.

Mrs. Cary Redman testifies that she heard the defendant make threats against the decedent. She also testifies to the acts of the defendant at the time he went up into Howerton's room. Olivia Ware was also called as a witness and she testifies that she was present in the room with the de-

ceased; that she turned so that she could see whether the defendant entered the room, and that she saw the defendant produce the knife from behind him and strike decedent. She then attempted to leave the room and did leave when the opportunity offered. As she went down the stairs she said, "They are killing that man."

The defense relies largely upon the testimony of the defendant on the trial.

We are clear that there was ample evidence to justify the conviction of the defendant, Pannell, of the crime of murder in the first degree.

We do not question the right of the jury to recommend mercy, but that was entirely for the jury. They did not see fit to recommend mercy. We also feel quite sure that there was nothing in the charge of the trial court that might have been misunderstood on that subject. The jury evidently voluntarily, and of their own free will, failed to make the recommendation.

Finding no prejudicial error in the record, the judgment of the Court of Common Pleas must be affirmed and the electrocution of the prisoner will be set for the 30th day of June, 1932.

HORNBECK and KUNKLE, JJ, concur.